Case number 21-1725 Jamal J. Kifafi individually and on behalf of all other similarly situated appellants versus Hilton Hotel Retirement Plan et al. Mr. Bruce for the appellant, Mr. Youngwood for the appellate. Mr. Bruce we'll hear from you. May it please the court. Almost nine years ago this court of appeals with a unanimous decision affirmed injunctive relief to remedy Hilton Hotel's violations of ERISA. The violations had gone on at that point for almost three decades. The main violation that affected practically every participant in the plan was that benefits were being backloaded to later years of service so that lower paid shorter service employees did not really accrue any benefits for their first few years of service up to nearly a decade of service. When the violation was uncovered Hilton in the words of this court tried to dismiss the court's jurisdiction by saying that it had adopted an amendment now that was going to deal with the backloading violations and then in this court's words did with that wave of the hand said that this case was now moot after three decades of violations. This court rejected that in 2012 and this court in 2019 again affirmed the permanent injunction that was issued in this case which required that Hilton shall award back payments and commence increased benefits for all class members as soon as administratively feasible. The site on that I had it's at the JA 98 and then it's also at 110. I believe I had 112 but it's at the second place where that injunction was repeated in 2013 after this court's affirmance is at JA 110. In joint parties it's much like the mandate of this court. An enjoined party is not there to second guess the court's injunction. An enjoined party cannot have a is meaning something approaching 60 percent of the class members who are due increases. That is not allowed and it's much like this court's mandate that this court does not issue a mandate for the district court to revisit it, review it, that the district court is to carry out this court's mandate and the same rules apply to a permanent injunction. Mr. Bruce, if I could I'd like to ask about what you think your burden was in order to convince the district court to reopen this case. The briefs suggest something along the lines of this that you needed to make a prima facie showing that Hilton was in non-compliance with the permanent injunction and that would be at least enough to get the case reopened. It might not be enough to show contempt but it would be at least enough to get the case reopened. Do you agree with that? The prima facie language was not ours. That was that was Hilton's language. Our language from the case law from Stewart which is a decision by Judge Lamberth was that we need to show sufficient evidence for the district court to think that there may be sufficient evidence when an accounting and post-judgment discovery is allowed to establish contempt. It's a significant or sufficient evidence test and that's the same as Judge Boasberg articulated in the Damas case for post-judgment discovery that it was significant evidence of non-compliance. We introduced that evidence to the district court but the district court did not even reach that question. I understand that and so you would say that there needed to be significant evidence of non-compliance and if you were able to put that in front of the district court that they should have reopened the case and then I have a follow-up question. Is that yes? Yes. Okay great and then I'll ask Mr. Youngblood the same question. If I were to look at the record here and conclude that no reasonable district court judge could have concluded that you met that standard should I affirm or should I still nevertheless vacate the district court's decision and remand for the district court to consider whether you produce significant enough evidence because we are a court of review we're not a court of first view. I suspect you think the second of those two options. Tell me why. Well the predicate of that. I know you disagree with the predicate but just assume it for now and I promise I don't think you've conceded the predicate but for the sake of the question assume it and tell me why I should still never. Can I have an opportunity though to show why you would not reach that conclusion? As long as you don't forget my hypothetical after that. Okay I think if we look in the first volume of the joint appendix your honor at page JA-266 you see there's a chart with categories of reasons why people were unpaid in as of March of 2015 and those reasons the class members covered by those reasons add up to 8,199 people. These categories were categories that Hilton Hotels created or Hilton Hotels contractors created and they show that that their notices sent out their payments to beneficiaries and there's a group of people where their unconfirmed addresses. There were 8,199 of those people falling into those categories. We got additional data from Hilton in 2017 two years later. That additional data showed that in that two-year period Hilton had paid 187 people out of that 8,199. That works out to being about 94 people per year. At that rate it would take close to 90 years for Hilton to complete implementation of this brief. They talk about well there might be some people who moved to other countries and died while after they let me stop you because I do appreciate that argument and I'm familiar with it from the briefing and I have a question about it as well but let me return you then to my hypotheticals. Assume for the sake of this question I disagree with you. I'm not even that I do but assume that I disagree with you. Assume that I think no reasonable jurist could find that you made the showing that's necessary. What's the best argument for why I should not affirm? Maybe you think I should affirm in that case. I don't think that the appellate court is those kinds of determinations. That is for the district court to make that determination and the district court didn't make it. The district court didn't reach that and so I think that the court has to deal with the case that's before it which is that the district court against this Supreme Court, this circuit, every other circuit. I understand and I think that I get it. Let me ask one last question. You pointed to 265 which is related to 266 which is related to 265. I'm looking at this bar graph with the blue bars and I looked at this and I thought well that first bar is very tall 10,000 payments made. The second bar is very short 1,600 payments made. That's only 15 percent of the first bar and it was after that time period that the district court said things are going well enough I'm going to end my supervisory jurisdiction. So the district court was very comfortable with a drop from 10,000 to 1,600 and if the district court was comfortable with that drop wouldn't we expect the next bar graph to be a very very short bar graph? Wouldn't we expect if we went from 10,000 to 1,600 that we would then go from about 1,600 to about 187? Well that wasn't the basis for the district court's decision anyway. What do you think about my amateur statistics and you can tell me why you think I've got my statistics? Because you need to look at the categories on the next page and the categories on the next page are not the that there was a notice of deferred benefits sent but no payment. That there there's nothing in there to indicate that there's going to be a drop-off where only 10 percent of that 5,184 people are going to be paid. That they all should be paid and the same thing with the payments due beneficiaries of deceased participants. There's there's close to 1,500 of those. There's no reason to expect that only 10 percent or only one percent of those people are going to be paid. They're all they're all supposed to be paid under the permanent injunction. Thank you Mr. Bruce. All right any other questions Judge Katsas? No. All right we'll give you a little bit of time on rebuttal. Mr. Bruce we'll hear from Mr. Youngwood. Thank you your honors. Good morning and may it please the court. Jonathan Youngwood for the appellees. Judge Walker let let me perhaps start with the chart that you were looking at which is exhibit 1A265 and I you your question includes the point I would make but add to it that all this information was in front of the district court when she issued her late 2017 order further confirming that she saw no need for continuing jurisdiction or court supervision of the implementation order. And it was that order that was also considered by this court in 2019 in affirming that situation. So if we have time I'm happy to walk through every exhibit that appellant has presented but with the exception of the survey which I'm happy to walk in to in some detail nothing here is new in the sense that nothing was not before the court previously in both this court and the district court when prior orders. Why didn't the district court why didn't the district court just say that? Well I think she did. I think the district court did and I understand she could have written more words. You can always write more words. I think in reciting the history of this case that Mr. Bruce gave you part of this is a 23 year old case that has been looked after by this district court judge for those 23 years. Multiple district court decisions, two prior visits to this court. I will say parenthetically not a case that's always gone my client's way. This is not a case in which the district court has consistently ruled for us. She ruled against us on liability and against us on a lot of matters regarding remedies. That she has recently ruled for us I think is further evidence of the depth to which she understands this case and has come to the conclusion that my clients are complying with the order that implementation cannot be measured by appellants definition of success and that's been part of some of her prior orders and it's been part of the consideration that this court in 2019 I think paid attention to in affirming her the prior orders that were in front of her at that time. But this isn't a case where the district court order is a little bit cryptic and sure you can always write more. She gave a very specific reason and it just doesn't seem to be a defensible one. She said this case is over because I terminated my jurisdiction. Done. And that seems impossible to reconcile with what we said in the second Kifafi opinion which is relinquishment of jurisdiction or not the party with the injunction can always come back and make the showing that things have broken down. Understood. Two responses. First I think you're referring to the last paragraph of her March 1 decision. If we have to look at the first paragraph which says for the reasons set forth herein the court denies both motions. So I think part of her reasoning is everything that follows not just the one sentence that ends the order. I think where so where in between that first paragraph and the last paragraph would I find some conclusion that the latest proffer doesn't make a prima facie case or whatever the threshold burden is. Those exact words are not there to answer the direct question your honor but I think in the consideration of the second to last paragraph of the order where she recites the briefing and the motions made by the parties that clearly shows that in I think eight months or ten months she considered the order. She had the party's arguments in front of them, considered them, and rejected them. That is but but I completely accept that there is no detailed analysis reference to the various exhibits. I'm happy to walk through those exhibits and get I question which is what is this court to do with this record if you were to conclude contrary to our argument if you were to conclude that this order itself isn't sufficient for you to defer to her discretion. But I would point to that paragraph and I point to the history. But I'm sorry the penultimate paragraph in the order. Well well that just seems like the one beginning following this affirmance. I guess the penultimate is right. That just seems like it's reporting the filings. It's a statement of procedural history. I think it's a statement of procedural history. I think it can be fairly read from this court's perspective that this district court judge with 23 years experience in this case considered the filings before it. But the words are the words. Okay okay so I understand your position on that so I'll let you go to Walker's possible alternative ground. So Judge Walker I think I'd answer it this way. First I think appellant has changed their position because they actually have asked you to reverse in full and order the relief that they sought below. I think appellant's argument concedes that that is something that they are not even favoring because they think it's for the district court in the first instance and that if she didn't do it you should ask her to consider it. Our view is that the record is clear that no district court could come to the view that the prima facie case had been established and I'm happy to go through that as well. It's on pages 20-21 of our brief. We outline our argument on that which includes reference to the district court's adoption of that standard in at 79 F sub 3rd at 100 which was part of the decision again or decisions before this court in February of 2019. So on the prima facie I would suggest to you that this court had the opportunity to review that standard and did not disturb it. So I think that is the standard and I don't think he's met it. So I think we could again I'm happy to walk through each of the exhibits all but the survey in one form or another or before the court the district court in prior motions. Mr. Youngwood I don't I don't want you to walk through all of them because we have your briefing but maybe if you could just briefly respond to Mr. Bruce's main point that that chart on JA 266 is strong for him. Yes your honor one second. So in particular he's talking he says that he's discovered there are 5,000 class members where there was notice of deferred benefit sent but no payment. Yes so our understanding from the papers before the district court that these figures are based on Hilton's summary excel spreadsheets through March 2015 and then supplemented through June 2017. The spreadsheets at least through 14 and 15 or again before the district court previously and so I can't say that there's not some incremental information here but effectively this is the exact type of data that was presented to the district court previously and deemed not sufficient to extend jurisdiction further and then affirmed by this court. I'd also what would you what would you say Mr. Youngwood to this argument if the district court had just said motion denied period if the order had been two words then you would be in a better position for us to affirm than if the district court did what it did which is say because I don't have jurisdiction motion denied. I'm certain if it just said motion denied Mr. Bruce would make the same arguments he's making here and I think what I would say Judge Walker which is why in response to the prior question I referred to the first paragraph of the order I think she is saying motion denied and and then she's writing more. I think it would be quite a thing that by writing more she's entitled to less deference than by writing less. I actually prefer this order to the motion denied. I started with I don't know the answer I'm I think the answer is that this provides it helps you understand as the reviewing court the history that that she went through the understanding that she has of it and the fact that her conclusion my words certainly not hers her conclusion is there's nothing new here. I do want to get to finish I think of what your hypothetical and multi-part question for Mr. Bruce was before my time expires which is I think you can affirm based on this record because you think that she did give you enough information to show she exercised her discretion. I also think you can affirm if on your own review you conclude that no district court reasonably exercising discretion would have come to a different result and I think the most you can do in terms of is send it back down to her to write whatever additional work she needs to write to give more of a grounds for you to understand what discretion and how she considered the things. What I don't think you can do is reverse and give him the relief the appellant the relief that they see. I'm happy to stop I know my time's expired the only if the court would be helpful for me to get to I'm happy to but I do understand my time has expired. Thank you I think we have the briefing on that Judge Katsas, Judge Walker did you have any other questions? No thank you. All right thank you counsel. All right Mr. Bruce I believe you were out of time we'll give you two minutes. Thank you your honor I think there's one point that that may address the Judge Walker's last question was that Hilton in its brief and now Mr. Youngwood has essentially done the same thing again they're arguing that that they seem to be conceding that this court should remand and they're arguing that the remand should tell the district court to further articulate its reasons for denying equitable relief and the the not only is that entirely slanted but it never gets to the the the the motions that the district court is to consider which is to show cause as to contempt as to why there shouldn't be a hearing on contempt and to order an accounting or post judgment discovery all of those things have established standards the district court cannot write on a blank slate where it has unfettered discretion which is what Mr. Youngwood is is inviting the district court has to follow the standards for those things and as we showed the standards for an accounting go back for 200 years that when when in the Finley case when there was a breakup of a partnership in a jewelry store that the partner who wound up with the business was required to account even though the court said it might not be probable that there would be anything turned up by that there was enough of an open question there for an accounting to be made and that's the same kind of standard that Judge Boasberg is articulating in the Damas case when there's significant evidence of non-compliance that post judgment discovery is in order the only way that that Hilton is sustained is by unfettered discretion and the is the the grand wave of the hand of no problems here even though all of the records indicate the problems all of the records indicate not only that there's a huge percentage of people who are unpaid but that there is absolutely no significant progress going on there's no efforts being made nothing is coming out even the people with the deferred benefits who are now over 55 they are only being paid in like a hundred or so a year out of that five thousand thank you we'll take the case under advisement
judges: Wilkins, Katsas, Walker